IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| **CALX RESOURCES, LLC,** ) | Case No. 14-09229 |
| ) | |
| 1136 2nd Ave. North ) | Judge Harrison |
| Nashville, TN 37208 ) | |
| ) | |
| Debtor. ) | |

**MOTION TO APPROVE (I) PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (III) APPROVING ADMINISTRATIVE EXPENSES, AND (IV) GRANTING RELATED RELIEF**

The Debtor in the above Chapter 11 case hereby requests that this Court approve the following Motion to approve (i) procedures for sale of substantially all of the Debtor's assets, (ii) authorizing assumption and assignment of certain executory contracts and unexpired leases, (iii) approving administrative expenses, and (iv) granting related relief (the "Motion") pursuant to Bankruptcy Rule 6004 and 6006 and as grounds for the Motion would show unto the Court as follows:

**JURISDICTION**

**1.** This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**2.** The Debtor filed a voluntary petition for Chapter 11 on November 20, 2014, and has been operating as a Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108. No committee has been appointed by the U.S. Trustee.

3. The Debtor is a limestone aggregate producer/supplier and operated a quarry located on certain real property in Livingston County, KY pursuant to the terms of an Aggregate Mining Lease dated February 1, 2011 (the "Mining Lease").

4. By Agreed Order entered April 17, 2015, the deadline to assume the Mining Lease was extended to May 5, 2015. Upon the execution of an asset purchase agreement on or before April 28, 2015, the deadline will be further extended for a period not to exceed sixty days until an auction can be held.

5. The Debtor has executed a letter of intent with VantaCore Partners LLC ("VantaCore") for the sale of substantially all of the assets (the "Assets") of the Debtor (the "Letter of Intent"). A copy of the Letter of Intent is attached hereto as Exhibit A. The Debtor and Winn Materials of Kentucky LLC ("Winn"), an affiliate of VantaCore, will enter into an asset purchase agreement (the "APA"). A copy of APA will be filed with the Court upon its approval and execution.

6. Under the terms of the Letter of Intent, the Debtor agreed to seek approval of certain sale procedures on or before May 12, 2015 for an action to be held on or before June 8, 2015 and closing by June 11, 2015 (the "Sale").

7. Attached hereto as Exhibit B are proposed Sale Procedures that are acceptable to the Debtor and Winn . Included within the Sale Procedures and the Letter of Intent is the requirement that Winn receive Court approval of a Break-Up Fee in the amount of $90,000 and expense reimbursement up to a maximum of $60,000, both to be paid to Winn as administrative expenses in this Chapter 11 case in the event that a competing bidder purchases the Assets.

**RELIEF REQUESTED**

**A. Sale of Assets Outside the Ordinary Course of Business under §363(b)**

8. The Debtors request (i) entry of an order approving the Sale Procedures (the "Sale Procedures Order"), a copy of which is attached hereto as Exhibit C, pursuant to sections 105(a) and 363

of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004, authorizing and approving certain proposed procedures to govern the submission of competing bids for substantially all of the Sellers' assets and the form and manner of notices of (a) the date, time, and place of the hearing to consider the sale, (b) the assumption and assignment of executory contracts and leases, (ii) approval of the Break-Up Fee and reimbursement of expenses as administrative expenses, and (iii) entry of an order approving the Sale (the "Sale Order"), a copy of which is attached hereto as Exhibit D, pursuant to sections 105, 363(b), (f), (k), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006, authorizing and approving, among other things, the sale of the Assets pursuant to the APA and assumption and assignment of certain executory contracts and leases.

9. In accordance with Bankruptcy Rule 6004(f)(1), sales of property rights outside the ordinary course of business may be by private sale or public auction. The Debtor has determined that a private sale of the Assets in accordance with the proposed Sale Procedures will enable them to obtain the highest or best offer for the Assets, thereby maximizing the value of their estates, and is in the best interests of the Debtors and their creditors and other stakeholders.

10. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To obtain court approval to sell property under section 363(b), the Debtors must show a "sound business purpose" for the proposed action. *Stephens Indus, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983). The "sound business purpose" test commonly considers four factors:

(1) a sound business reason or emergency justifies a pre-confirmation sale;

(2) adequate and reasonable notice of the sale was provided to interested parties;

(3) the sale has been proposed in good faith; and

(4) the purchase price is fair and reasonable.

*In re Barnhill's Buffet, Inc.*, No. 07-08948, 2008 Bankr. LEXIS 2864, at *7 (Bankr. M.D. Tenn. Feb. 28, 2008) (citing *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991)).

11. As noted, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

12. If a valid business justification exists, the applicable principle of law embeds the debtor's decision to sell property out of the ordinary course of business with a strong presumption that "'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). A section 363 sale should be approved if the Court is satisfied that the debtor has exercised sound business judgment; provided adequate notice; the purchaser has proceeded in good faith; and the purchase price is fair. *See Barnhill's Buffet*, 2008 Bankr. LEXIS 2864, at *7; *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

13. It is well established that a Chapter 11 debtor may sell all or substantially all its assets pursuant to § 363(b) prior to continuation of a Chapter 11 plan, provided the court finds an articulated business reason for the proposed sale, such as exists in the cases at bar. *See Consumer News & Bus. Channel P'ship v. Fin. News Network Inc. (In re Fin. News Network Inc.)*, 980 F.2d 165, 169 (2d Cir. 1992) (in considering sale outside plan of reorganization, "'a bankruptcy judge must not be shackled with unnecessarily rigid rules when exercising the undoubtedly broad administrative power granted him under

the [Bankruptcy] Code") (quoting *Lionel* at 1069); *see also Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11 estate . . . may be conducted if a good business reason exists to support it."); *Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 144 (2d Cir. 1992) (approval of subsidiary's sale of its assets before confirmation of plan was not abuse of discretion) *In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009); *In re General Motors Corp.*, 407 B.R. 463 (Bankr S.D.N.Y. 2009).

14. The Debtor has currently ceased operations and has been seeking a sale of its assets months before the commencement of this Chapter 11 case. Further the Debtor is at risk of losing it primary assets in the Mining Lease unless an immediate sale is conducted.

### B. Sale of Assets Free and Clear Under §363(f)

15. There are no known liens that attach to the Assets. Nevertheless, the Letter of Intent requires that the transfer of Assets be free and clear of liens and interests, which could include inchoate interests. Accordingly, it is appropriate that the Assets be sold free and clear of liens, claims, encumbrances, and interests, including rights or claims based on any successor or transferee liability, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code.

16. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> > (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> >
> > (2) such entity consents;
> >
> > (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> >
> > (4) such interest is in bona fide dispute; or
> >
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

17. Any holders of liens or interests will have consented, or may be deemed to have consented, to the Sale of the Assets, thereby satisfying section 363(f)(2) of the Bankruptcy Code unless those parties object to the Sale and be heard at the Sale Hearing. Thus, the sale of the Assets free and clear of liens, claims, encumbrances, and interests, including rights or claims based on any successor or transferee liability, except for the liabilities assumed by Winn or any other successful bidder, will satisfy the statutory prerequisites of sections 105(a) and 363(f) of the Bankruptcy Code. Accordingly, the Assets should be transferred to the Purchaser free and clear of all liens, claims, encumbrances, and interests, except for Assumed Liabilities, with such liens, claims, encumbrances, and interests to be transferred to and attach to the net sale proceeds of the Assets.

C. **Assumption And Assignment Of Executory Contracts And Unexpired Leases Under § 365**

18. The only executory contract or unexpired lease known to the Debtor is that certain lease of real property in Lexington, KY known as the Mining Lease. This lease is being assigned to Winn without any obligation of the Debtor to cure any default under the Mining Lease. Inc case there are executory contracts that become known prior to Closing, the APA establishes procedures for assuming and assigning executory contracts or leases to Winn. Specifically, Winn has the right to designate as an "Assumable Executory Contract," any executory contract or lease that it may want to assume, subject to the procedures set forth in the APA.

19. Section 365(a) of the Bankruptcy Code provides a debtor in possession "subject to the court's approval may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a). Upon finding that debtors have exercised their sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code. *See In re Evans Coal Corp.*, 485 B.R. 162, 167 (Bankr. E.D. Tenn. 2013); *see also Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion*

*Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

20. Section 365(b)(1) of the Bankruptcy Code requires that the Debtors cure, or provide adequate assurance that it will promptly cure, any outstanding defaults under the Assumable Executory Contracts in connection with the assumption and assignment of these agreements to Purchaser.

21. Further, pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor in possession may assign an executory contract or Lease if

> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

*Id.* § 365(f)(2).

22. Regarding the Mining Lease, the Lessor, WPP, LLC, will consent to the assignment and the adequate assurance of future performance by Winn. The same is not true, however, for any other Qualified Bidder.

23. As to any other executory contract, the procedures in the APA are reasonably calculated to provide all counterparties to the Assumable Executory Contracts with proper notice of the potential assumption and assignment of their executory contracts or Leases, any cure costs relating thereto, and the deadline to object to cure amounts.

### D. Allowance of Break-Up Fee as an Administrative Expense

24. The Letter of Intent requests that a Break-Up Fee in the amount of $90,000 and reimbursement of expenses up to a maximum of $60,000 be allowed as administrative expenses in this Chapter 11 case if Winn is not the Successful Bidder. Courts have permitted the allowance of break-up fees and reimbursement of expenses if the fee and expense correlates to the actual transaction costs or expenses incurred by the stalking horse. *See* <u>In re Hupp Industries, Inc.</u>, 140 B.R. 191 (Bankr. M.D. Ohio

Case 3:14-bk-09229    Doc 90    Filed 04/28/15    Entered 04/28/15 12:27:19    Desc Main
Document      Page 7 of 10

1992); *In re Integrated Resources, Inc.,* 135 B.R. 746 (Bankr. S.D.N.Y. 1992); *In re 995 Firth Avenue Assoc., L.P.*, 96 B.R. 24 (Bankr. S.D.N.Y. 1989). The following factors have been applied:

> Significant factors to be considered in determining the propriety of allowing break-up fee provisions include, *inter alia,* the following:
> 1) Whether the fee requested correlates with a maximization of value to the debtor's estate;
> 2) Whether the underlying negotiated agreement is an arms-length transaction between the debtor's estate and the negotiating acquirer;
> 3) Whether the principal secured creditors and the official creditors committee are supportive of the concession;
> 4) Whether the subject break-up fee constitutes a fair and reasonable percentage of the proposed purchase price;
> 5) Whether the dollar amount of the break-up fee is so substantial that it provides a "chilling effect" on other potential bidders;
> 6) The existence of available safeguards beneficial to the debtor's estate;
> 7) Whether there exists a substantial adverse impact upon unsecured creditors, where such creditors are in opposition to the break-up fee.

*In re Hupp Industries, Inc.*, 140 B.R. 191, 194 (Bankr. M.D. Ohio 1992).

25. In this case, the Debtor asserts that the amount of the fee and expenses are reasonably correlated to the Sale and that the circumstances of this case satisfy the factors set forth above. The willingness of Winn to submit a stalking horse big will create value for the estate for which its expenses should be allowed under § 503(b).

### E. Good Faith Purchaser Under §363(m)

26. Winn has been and is acting in good faith and is entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code.

27. Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

28. The terms and provisions of the Letter of Intent and APA were negotiated by the Debtor and Winn at arm's length, without collusion, and in good faith. The Sale represents substantial value to the Debtor and provides fair consideration for the Assets. Moreover, Winn does not hold any interests in the Debtor is not affiliated with the Debtor, its officers, or directors.

### F. Request for Relief Under Bankruptcy Rules 6004(H) and 6006(D)

29. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). Any order approving the sale of the Assets in accordance with the Sale Procedures must be effective immediately upon entry of such order by providing that the fourteen-day stay shall not apply. As described above, absent a prompt approval and consummation of the Sale, the Assets will rapidly decline in value as wasting assets. Therefore, it is imperative that the Sale Order be effective immediately to permit the Sale to close without any delay. The fourteen-day stay under Bankruptcy Rule 6004(h) should be waived.

30. Bankruptcy Rule 6006(d) provides that an order authorizing the assignment of an executory contract or unexpired lease under section 365(f) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise. FED. R. BANKR. P. 6006(d). Any order approving the sale of the Assets, which includes approving the assumption and assignment of executory contracts and unexpired leases, must be effective immediately upon entry of such order by providing that the fourteen-day stay shall not apply. The exigent circumstances necessitating the prompt consummation of the Sale mandates that the Sale Order, the assumption and assignment of executory contracts and unexpired leases be effective immediately upon entry. It is essential that the Sale Order be effective without any delay by providing that the fourteen-day stay under Bankruptcy Rule 6006(d) is

WHEREFORE, the Debtor prays that the Court enter the attached Order approving the proposed Sale Procedures, including Break-Up Fee and reimbursement of expenses, and setting a hearing on the sale of the Assets on June 9, 2015 at 9:00 am, Courtroom Three, 701 Broadway, Nashville, TN 37203.

Respectfully Submitted:

*/s/ William L. Norton, III*
William L. Norton, III (#10075)
Alexandra E. Dugan (#30420)
Bradley Arant Boult Cummings LLP
1600 Division St., Suite 700
Nashville, TN 37203
(615) 252-2397
(615)252-6397 (fax)
bnorton@babc.com
adugan@babc.com

*Attorneys for the Debtor*